## NATURAL RESOURCES DEFENSE COUNCIL, INC.; Snake River Alliance, Petitioners,

v.

## Spencer ABRAHAM,* Secretary of Energy; United States of America, Respondents.

No. 00–70015.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 9, 2001

Filed March 28, 2001

David E. Adelman (argued), Natural Resources Defense Council, Washington, D.C., and Eric R. Glitzenstein, Meyer & Glitzenstein, Washington, D.C., for the petitioners.

Lisa E. Jones, Department of Justice, Environment & Natural Resources Division, Washington, D.C., for respondents.

Before: RYMER, THOMAS and McKEOWN, Circuit Judges.

RYMER, Circuit Judge:

This case involves Department of Energy (DOE) Order 435.1, together with its Manual and Implementation Guide, which provide (among other things) a process for determining whether certain radioactive waste streams are "waste incidental to reprocessing" that are not considered "high-level waste." The Natural Resources Defense Council, Inc. and the Snake River Alliance (collectively, NRDC) filed a petition for review in this court to set aside DOE Order 435.1. NRDC contends that the evaluation method adopted in the Order, Manual and Guide redefines "high-level radioactive waste" as low-level or transuranic waste, contrary to the Nuclear Waste Policy Act of 1982 (NWPA), 42 U.S.C. § 10101(12),[1] and allows DOE, rath-

---

* Spencer Abraham is substituted for his predecessor, Bill Richardson, as Secretary of Energy. Fed. R.App. P. 43(c)(2).

1. Section 10101(12) provides:
    The term "high-level radioactive waste" means—

    (A) the highly radioactive material resulting from the re-processing of spent nuclear fuel, including liquid waste produced directly in reprocessing and any solid material derived from such liquid waste that

er than the Environmental Protection Agency (EPA) and the Nuclear Regulatory Commission (NRC), to determine whether to leave this reprocessing waste in nuclear waste storage tanks at DOE's Hanford Reservation, Savannah River, and Idaho National Engineering Laboratory sites.[2]

As NRDC invokes our original jurisdiction pursuant to NWPA, 42 U.S.C. § 10139(a), we must first decide whether this is an agency decision over which § 10139(a) confers original and exclusive jurisdiction in the courts of appeals. NWPA's judicial review provisions are not a model of clarity. However, we conclude that this court lacks subject matter jurisdiction because DOE Order 435.1 pertains to management of radioactive waste at federal defense facilities and is not a decision "under" NWPA. Accordingly, we shall transfer this petition to the district court for the District of Idaho.

## I

NRDC submits that review of DOE Order 435.1 falls within § 10139(a)(1)(A). Section 10139(a) is NWPA's provision for judicial review, and subsection (1)(A) states:

> ... the United States courts of appeals shall have original and exclusive jurisdiction over any civil action—

(A) for review of any final decision or action of the Secretary, the President, or the Commission under this part; ...

"This part"—Part A of Subchapter I—of NWPA is entitled "Repositories for Disposal of High–Level Radioactive Waste and Spent Nuclear Fuel." Subchapter I is captioned "Disposal and Storage of High–Level Radioactive Waste, Spent Nuclear Fuel and Low–Level Radioactive Waste." Part A establishes procedures for disposal of high-level radioactive waste and spent nuclear fuel in repositories, now sited solely at Yucca Mountain, Nevada. *See Nevada v. Department Of Energy*, 133 F.3d 1201, 1203 (9th Cir.1998). The purposes of "this part" are to establish a schedule for siting, constructing and operating repositories; to establish the federal responsibility for disposal of civilian waste and spent fuel; to define the relationship between the federal government and state governments with respect to disposal of such waste and spent fuel; and to establish a Nuclear Waste Fund, composed of payments made by generators and owners of such waste. 42 U.S.C. § 10131(b). Hanford, Savannah and the Idaho National Engineering Laboratory are federal facilities where high-level waste is generated and stored; they pre-date NWPA, and are not repositories. For these reasons, DOE maintains that NWPA does not govern its waste management decisions at these in-

contains fission products in sufficient concentrations; and

(B) other highly radioactive material that the Commission, consistent with existing law, determines by rule requires permanent isolation.

The Manual's definition of high-level waste is: High-level waste is the highly radioactive waste material resulting from the reprocessing of spent nuclear fuel, including liquid waste produced directly in reprocessing and any solid material derived from such liquid waste that contains fission products in sufficient concentrations; and other highly radioactive material that is determined, consistent with existing law, to require permanent isolation.

DOE M 435.1–1 at II–1.

The manual describes "Waste Incidental to Reprocessing" as follows:

Waste resulting from reprocessing spent nuclear fuel that is determined to be incidental to reprocessing is not high-level waste, and shall be managed under DOE's regulatory authority in accordance with the requirements for transuranic waste or low-level waste, as appropriate. When determining whether spent nuclear fuel reprocessing plant wastes shall be managed as another waste type or as high-level waste, either the citation or evaluation process ... shall be used: ...

*Id.*

**2.** For purposes of this decision, we assume NRDC's standing to make a NWPA challenge. *See Friends of the Earth, Inc. v. Laidlaw Environmental Servs.*, 528 U.S. 167, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000).

stallations; thus, DOE Order 431.5 is not a decision under NWPA that is subject to judicial review within this court's original jurisdiction.

"In the NWPA, Congress created a comprehensive scheme for the interim storage and permanent disposal of high-level radioactive waste generated by civilian nuclear power plants." *Indiana Michigan Power Co. v. Department of Energy*, 88 F.3d 1272, 1273 (D.C.Cir.1996). Section 10107(a) provides that NWPA does not apply to any atomic energy defense activity or facility.[3] NRDC acknowledges that NWPA does not require defense high-level waste to be disposed in a repository, but points out that it does require the President to evaluate potential methods for disposing of such waste. 42 U.S.C. § 10107(b)(1). Because the President determined on April 30, 1985, that a separate facility was not necessary for defense high-level waste, NRDC notes that DOE only has authority for disposal of defense high-level wastes at Yucca Mountain.[4]

3. Section 10107(a), "Atomic energy defense activities," states:
> Subject to the provisions of subsection (c) of this section, the provisions of this chapter shall not apply with respect to any atomic energy defense activity or to any facility used in connection with any such activity.

Subsection (c), "Applicability to certain repositories," provides:
> The provisions of this chapter shall apply with respect to any repository not used exclusively for the disposal of high-level radioactive waste or spent nuclear fuel resulting from atomic energy defense activities, research and development activities of the Secretary, or both.

4. *See National Association of Regulatory Utility Commissioners (NARUC) v. Department of Energy*, 851 F.2d 1424, 1426 (D.C.Cir. 1988)(hereinafter *"NARUC "*). In *NARUC*, the court explained that when Congress passed NWPA it did not decide whether high-level radioactive waste resulting from atomic energy defense activities should be stored in repositories developed under the Act or separately. Once the President determined that defense wastes should be disposed in the repositories being developed for civilian waste

While this may be true, DOE Order 435.1 addresses management of wastes at DOE facilities. The authority to do so comes from the Atomic Energy Act (AEA), 42 U.S.C. § 2151 *et seq.*; the Energy Reorganization Act (ERA), Pub.L. No. 98–438, 88 Stat. 1233, *codified at* 42 U.S.C. § 5801 *et seq.*; and the Department of Energy Organization Act (DEO), Pub.L. No. 95–91, 91 Stat. 565, *codified at* 42 U.S.C. § 7101 *et seq.*

The AEA, enacted in 1954, established a comprehensive regulatory scheme for military and domestic nuclear energy. It authorized the Atomic Energy Commission (AEC)—now DOE and NRC—to establish instructions by rule, regulation, or order, governing possession and use of nuclear material[5] and the operation of facilities used in conducting its activities.[6] When the AEC was abolished in 1974, its functions were transferred to the Energy Research and Development Agency (ERDA), DOE's predecessor agency, and to the NRC. *See* Energy Reorganization Act of 1974(ERA), Pub.L. No. 93–438 §§ 104, 201, 88 Stat. 1233, 1237–38, 1242–44, *codi-*

under NWPA, DOE was obliged under NWPA to arrange for use of the civilian repository for disposal of defense high-level waste. 42 U.S.C. § 10107(b)(2). Section 10107(b)(2) provides that "[s]uch arrangements shall include the allocation of costs of developing, constructing and, operating" the repository.

5. 42 U.S.C. § 2201(b) authorized the AEC to
> establish by rule, regulation, or order, such standards and instructions to govern the possession and use of special nuclear material, source material, and byproduct material as the Commission may deem necessary or desirable to promote the common defense and security or to protect health or to minimize danger to life or property....

6. 42 U.S.C. § 2201(i)(3) authorized the AEC to prescribe such orders as it deemed necessary
> to govern any activity authorized pursuant to this chapter, including standards and restrictions governing the design, location, and operation of facilities used in the conduct of such activity, in order to protect health and to minimize danger to life or property....

*fied at* 42 U.S.C. § 5814. Under the ERA, NRC was given commercial licensing and related regulatory functions; the ERDA took over the rest of AEC's functions, except that the NRC must license ERDA facilities that are authorized for "subsequent long-term storage of high-level radioactive waste generated by the Administration." 42 U.S.C. § 5842. As the Senate Committee explained, "[i]t is not the intent of the committee to require licensing of such storage facilities which are already in existence ..." S.Rep.No. 93–980, 93d Cong., 2d sess., *reprinted in* 1974 U.S.C.C.A.N 5520–21; *see also Natural Resources Defense Council, Inc. v. Nuclear Regulatory Commission,* 606 F.2d 1261, 1267 (D.C.Cir.1979). In 1977, Congress abolished ERDA and transferred its functions to DOE. *See* DEO, § 301(a), Pub.L. No. 95–91, 91 Stat. 565, 577–78 (1977), *codified at* 42 U.S.C. § 7151(a). This left control over existing government facilities and defense nuclear waste in DOE. *See* 42 U.S.C. § 7133(a)(8)(A), (B), (C), and (E).[7]

DOE Order 435.1 was promulgated in accordance with the AEA to replace a previous DOE Order on Radioactive Waste Management, DOE O 5820.2A, and applies to the management of all high-level waste, transuranic waste, and low-level waste for which DOE is responsible. It is not a decision about the siting of a repository, establishing federal responsibility for disposal of civilian radioactive waste, defining the relationship between the federal government and state governments with respect to disposal of such waste and spent fuel, or establishing a Nuclear Waste Fund under Part A of Subchapter I of NWPA. *See* 42 U.S.C. § 10131(b). Nor is DOE Order 435.1 a decision under any other Part of Subchapter I, or of any other Subchapter of NWPA.[8] Therefore, this action does not seek review of any decision that is directly "under this part."[9]

NRDC does not argue otherwise; rather, it posits that the Manual and Guide accompanying DOE Order 435.1 state that all high-level waste must be disposed pursuant to the NWPA. The Manual provides that "[d]isposal of high-level waste must be in accordance with the provisions of the *Atomic Energy Act of 1954,* as amended, the *Nuclear Waste Policy Act .of 1982,* as amended, or any other applicable statutes." DOE M 435.1–1 at II–12. The Guide observes that "[b]ackground and knowledge of both the *Nuclear Waste Policy Act of 1982,* as amended, definition and the Nuclear Regulatory Commission definition, at 10 CFR Part 60, is needed to ensure that waste that is to be managed as

---

**7.** Section 7133(a)(8) assigns to Assistant Secretaries of DOE

[n]uclear waste management responsibilities, including-

(A) the establishment of control over existing Government facilities for the treatment and storage of nuclear wastes, including all containers, casks, buildings, vehicles, equipment, and all other materials associated with such facilities;

(B) the establishment of control over all existing nuclear waste in the possession or control of the Government and all commercial nuclear waste presently stored on other than the site of a licensed nuclear power electric generating facility, except that nothing in this paragraph shall alter or effect title to such waste;

(C) the establishment of temporary and permanent facilities for storage, management, and ultimate disposal of nuclear wastes;

(D) the establishment of facilities for the treatment of nuclear wastes;

(E) the establishment of programs for the treatment, management, storage, and disposal of nuclear wastes;....

**8.** Part B sets up an interim program for federal storage of spent fuel from civilian nuclear power plants; Part C has to do with monitored retrievable storage facilities; Part D concerns closure of low-level radioactive waste sites; Part E redirects the nuclear waste program to Yucca Mountain; Parts F and G permit benefits agreements; and Part H deals with transportation. Subchapter II of the Act provides for development of a test and evaluation facility.

**9.** For this purpose we assume, without deciding, that DOE Order 435.1 represents a "final" decision or action of the Secretary.

high-level waste has been properly characterized to be high-level waste." DOE G 435.1–1 at II–1. From these statements NRDC infers that the NWPA is necessarily implicated whenever high-level waste is disposed, and the AEA does not exclusively control DOE's disposal of defense high-level waste.

Whether or not this is so, it does not follow that DOE was making a decision "under [Part A]" of NWPA for purposes of this court's original jurisdiction over NRDC's action. NWPA—like any other authority—can be implicated by a decision that is not "under" it for purposes of subject matter jurisdiction.

NRDC also points to NWPA's overarching purpose of establishing federal policy for safely disposing of all high-level wastes, 42 U.S.C. § 10131(a),[10] and contends that NWPA should be broadly construed to enfold any kind of disposal of high-level waste. In its view, this would bring the order's incidental waste process under the jurisdiction of the Act because no matter what it is called, the waste continues to be "waste resulting from reprocessing" that must be disposed in accordance with NWPA. NRDC further

suggests that reading the judicial review provision in NWPA to apply to the entire Act, as the court did in *General Electric Uranium Management Corp. v. Department of Energy*, 764 F.2d 896 (D.C.Cir. 1985), compels us to take jurisdiction of this case. We disagree.

*General Electric* arose in the quite different context of a DOE rule establishing the basis upon which the agency would compute a fee for fuel spent to generate electricity prior to April 7, 1983. NWPA established a Nuclear Waste Fund and specifically prescribed a one-time fee for electricity generated by spent nuclear fuel. 42 U.S.C. § 10222(a)(3). However, the provision for a one-time fee is not within the same part as the judicial review provision; and the Subchapter of which it is a part itself has no specific review provision. When General Electric challenged the one-time fee set by DOE as contrary to the fee prescribed by Congress in NWPA, the court held that the rule fell within the class of agency actions reviewable under § 10139(a)(1)(A) because it was inconceivable that Congress provided review in the courts of appeals for all of the waste disposal actions identified in the Act,[11] but not

10. Section 10131(a) sets forth the Congressional findings that

> (1) radioactive waste creates potential risks and requires safe and environmentally acceptable methods of disposal;
> (2) a national problem has been created by the accumulation of (A) spent nuclear fuel from nuclear reactors; and (B) radioactive waste from (i) reprocessing of spent nuclear fuel; (ii) activities related to medical research, diagnosis, and treatment; and (iii) other sources;
> (3) Federal efforts during the past 30 years to devise a permanent solution to the problems of civilian radioactive waste disposal have not been adequate;
> (4) while the Federal Government has the responsibility to provide for the permanent disposal of high-level radioactive waste and such spent nuclear fuel as may be disposed of in order to protect the public health and safety and the environment, the costs of such disposal should be the responsibility of the generators and owners of such waste and spent fuel;

> (5) the generators and owners of high-level radioactive waste and spent nuclear fuel have the primary responsibility to provide for, and the responsibility to pay the costs of, the interim storage of such waste and spent fuel until such waste and spent fuel is accepted by the Secretary of Energy in accordance with the provisions of this chapter;
> (6) State and public participation in the planning and development of repositories is essential in order to promote public confidence in the safety of disposal of such waste and spent fuel; and
> (7) high-level radioactive waste and spent fuel have become major subjects of public concern, and appropriate precautions must be taken to ensure that such waste and spent fuel do not adversely affect the public health and safety and the environment for this or future generations.

11. The court's list of actions concerning waste disposal over which Congress intended the courts of appeals to have review include "the choice, characterization, approval of,

for questions concerning the composition of the Nuclear Waste Fund and a few other matters located in Subchapter III. Unlike orders with respect to management of waste at existing federal (defense) facilities, some kind of one-time fee rule for civilian generators was clearly contemplated by NWPA and the rule at issue was promulgated pursuant to DOE's statutory mandate under NWPA. In these circumstances, the court concluded that it was sensible for review to be in the appellate tribunal.

*Tennessee v. Herrington,* 806 F.2d 642 (6th Cir.1986), presented a similar situation. The State of Tennessee challenged the legality of DOE's proposal for construction of a monitored retrievable storage facility (MRS) for failure to comply with NWPA's consultation and cooperation obligations. The MRS, if adopted by Congress, was to serve as a back-up to the repository program to accommodate spent nuclear fuel and high-level radioactive waste resulting from civilian nuclear activities. 42 U.S.C. § 10161(b)(1). Section 10161 of the Act contains all of the express provisions relating to MRS, but does not expressly state that MRS facilities are subject to the jurisdictional provisions of § 10139(a). The MRS provisions are located in Part C, not Part A of Subchapter I. However, § 10161(h) makes several sections and subsections of Part A applicable to the MRS siting process. These are the NWPA sections upon which Tennessee's claim was based. In these circumstances, the court agreed with DOE's contention that, at least to the extent DOE's conduct is required because of the incorporation of sections found in Part A, actions arising under § 10161(h) are subject to the appellate court's original jurisdiction. Here, DOE's definition of "waste incidental to reprocessing" may or may not comport with NWPA's definition of "high-level

waste" in § 10101, but DOE's conduct is not required by virtue of any section of NWPA linked to Part A.

We recognize the value of concentrating all actions that contest final DOE decisions under NWPA in the courts of appeals. The Court of Appeals for the District of Columbia Circuit explained this well in *General Electric.* 764 F.2d at 903–904. Nevertheless, NWPA's provision for judicial review is limited to decisions "under" the *part,* or at least under the *Act* when the decision is pursuant to a part of the Act and relates to the purposes of the part in which the judicial review provision is placed.

Because DOE Order 435.1 is not a decision under Part A of Subchapter I or of any other section of NWPA, we lack original or exclusive jurisdiction over this action.

## II

NRDC urges us to transfer the action to district court instead of dismissing it if, contrary to the position that NRDC's believes is correct, we conclude that its challenge is not subject to judicial review under § 10139(a). DOE advances a number of arguments to the contrary, but on balance we believe that transfer is appropriate. In transferring the petition, we express no view, one way or the other, about the remaining jurisdictional and prudential issues raised by the Secretary. We leave issues of standing, ripeness, and of course the merits to the district court.

Although the parties have made no suggestions about a transferee forum, we presume that the District of Idaho is proper, as it is the only district in this circuit where a target plaintiff resides. Therefore, we order the petition transferred to

and authorization for construction of candidate sites; federal agency actions such as coordination and environmental review; research and development questions relating to

the disposal of high-level wastes and [spent nuclear fuel], including funding and payments to the states and Indian tribes under the Act." 764 F.2d at 901–02 (footnotes omitted).

the District of Idaho.[12]

PETITION TRANSFERRED.

---

**12.** We note in this connection that the Petition also seeks to set aside DOE's July 14, 1999 finding that Order 435.1 is excluded from the requirements of the National Environmental Policy Act, 42 U.S.C. §§ 4321 *et*

*seq.*, a claim which NRDC elected not to pursue in this court.

